492

In re UNION OIL CO. OF CALIFORNIA.
Patent Appeal No. 3762.

Court of Customs and Patent Appeals.
March 22, 1937.

Philip Subkow (T. A. Hostetler, of Washington, D. C., of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

On February 6, 1932, the appellant, Union Oil Company of California, filed its application in the United States Patent Office for the registration of a trade-mark used by the appellant in connection with the sale of gasoline. In this application, it was alleged that said mark had been continuously used in the business of said corporation since January 2, 1932. The mark, as shown by the application, consists of the numerals "76" in block type. The registration was refused by the examiner on the grounds, as stated by him: " * * · * In the applicant's case, if the purchaser happens to be the retailer or the ultimate consumer, the number '76' applied to gasoline would doubtless indicate to him the octane rating, while if the purchaser is seeking material for blending purposes, '76' would doubtless mean straightrun gasoline of 76 Baumé gravity.. It is believed that to no one in the trade would it indicate origin or ownership, and that therefore it cannot serve as a trademark, no matter what the applicant had in mind in applying it to the goods. * * *"

An affidavit was then filed by the appellant, in which one Lester G. Metcalf, manager of refineries for the appellant, stated that he was familiar with the packaging, shipping, and marketing of gasoline in intrastate and interstate commerce, and:

"That he does not know of and has never heard of any custom in the petroleum industry of using numbers as marks or markings on containers for gasoline to indicate the quality, grade or character of gasoline;

"That the Union Oil Company of California to his knowledge has not used any numbers to indicate such quality or grade of gasoline;

"That he is familiar with the Trademark Application, Serial No. 323,922, for the numeral '76' for gasoline, filed February 6, 1932, by the Union Oil Company of California; and

"That said numeral '76' was not affixed by said Union Oil Company of California to the gasoline to indicate its gravity or octane rating or any other grade, characteristic or quality of the gasoline, but merely as an arbitrary trademark."

Again the examiner refused registration, and an appeal was taken to the Commissioner of Patents, who affirmed the decision of the Examiner of Trade-Marks. A petition for rehearing was filed, together with an extensive brief, which petition for rehearing was thereafter denied. The appellant has brought the matter to this court.

The Commissioner of Patents, in his decision, held, in substance, that numerals may constitute good and valid trade-marks, if properly used to denote origin, but that if such numerals indicate something besides origin, such as style, quality, size, or patterns, they do not constitute valid trade-marks. As to the meaning of the particular numerals here sought to be registered, the commissioner was of opinion that:

"Viewing the case at bar in the light of the foregoing, it appears that the numeral '76' might well indicate either the Baumé gravity rating or the octane rating of the applicant's gasoline. Indeed, in the large advertisement which applicant has submitted in connection with the specimens, the statement is made that '76' (applicant's gasoline) gives a higher octane rating on the road than any other non-premium fuel. This clearly indicates a connection between the numeral and the octane rating of the gasoline.

"Furthermore, it appears, that in quoting prices it is common to refer to the octane or the Baumé rating of gasoline and the numeral '76' falls squarely within the range of both ratings, which, it might be stated in passing, is rather small. Under these circumstances I do not believe that the applicant's mark is entitled to registration."

In connection with the ruling of the commissioner, the Solicitor for the Patent Office presents from the record (not printed) Exhibits A and B, which are photostatic copies of certain pages of the Oil and Gas Journal, a trade publication, which gives quotations on refined and crude petroleum prices.

The main question presented divides itself into two subdivisions: First, may a number constitute a valid trade-mark within the meaning of the Trade-mark Registration Act of February 20, 1905? Second, if such a number can constitute a valid trade-mark, do the facts here before us establish that the alleged mark involved here has been so used as to entitle it to registration?

■ Many years ago, in discussing the question of trade-marks, the Supreme Court announced, in Delaware & H. Canal Co. v. Clark, 13 Wall. 311, 322, 20 L.Ed. 581, that the office of a trade-mark was to point out distinctively the origin, or ownership of the article to which it is affixed; or, in other words, to give notice who was the producer, adding, "This may, in many cases, be done by a name, a mark, or a device well known, but not previously applied to the same article." In the same case, the Supreme Court said that, "No one can claim protection for the exclusive use of a trade-mark or trade-name which would practically give him a monopoly in the sale of any goods other than those produced or made by himself," and, "Nor can a generic name, or a name merely descriptive of an article of trade, of its qualities, ingredients, or characteristics, be employed as a trade-mark and the exclusive use of it be entitled to legal protection."

In the same case, the following quotation is directly in point here: "He has no right to appropriate a sign or a symbol, which, from the nature of the fact it is used to signify, others may employ with equal truth, and therefore have an equal right to employ for the same purpose."

Afterwards, in McLean v. Fleming, 96 U.S. 245, 254, 24 L.Ed. 828, the Supreme Court said, in part: "Subject to the qualification before explained, a trade-mark may consist of a name, symbol, figure, letter, form, or device, if adopted and used by a manufacturer or merchant in order to designate the goods he manufactures or sells to distinguish the same from those manufactured or sold by another, to the end that the goods may be known in the market as his, and to enable him to secure such profits as result from his reputation for skill, industry, and fidelity." (Italics ours)

Again, in Amoskeag Manufacturing Co. v. Trainer, 101 U.S. 51, 54, 25 L.Ed. 993, the Supreme Court quoted, with approval, a part of the opinion of the Superior Court of the City of New York, in the case of Amoskeag Manufacturing Co. v. Spear & Ripley, 4 N.Y.Super.Ct.(2 Sandf.) 599: "* * * the owner of an original trade-mark has an undoubted right to be protected in the exclusive use of all the marks, forms, or symbols that were appropriated as designating the true origin or ownership of the article or fabric to which they are affixed; but he has no right to the exclusive use of any words, letters, figures, or symbols which have no relation to the origin or ownership of the goods, but are only meant to indicate their names or quality. He has no right to appropriate a sign or symbol, which from the nature of the fact it is used to signify, others may employ

with equal truth, and therefore have an equal right to employ for the same purpose."

Further, in Coats v. Merrick Thread Co., 149 U.S. 562, 572, 13 S.Ct. 966, 969, 37 L. Ed. 847, in discussing the respective rights of the parties to use the words "Best Six Cord," and "200 Yds.," the Supreme Court said, in part: "Clearly, the plaintiffs cannot, as patentees, claim a monopoly of these numerals beyond the life of the patent; and it is equally clear that, where used for the purpose of imparting information, they are not susceptible of exclusive appropriation as a trade-mark, but are the common property of all mankind."

In Shaw Stocking Co. v. Mack et al., 12 F. 707, the Circuit Court of the Northern District of New York, while holding that the complainant had established its right to the figures "830" as a trade-mark for stockings, as indicating origin, recognized the rule that figures used only to indicate a grade or quality could not be exclusively appropriated by any one person or business interest.

Vacuum Oil Co. v. Climax Refining Co. (C.C.A.) 120 F. 254, 255, was a case involving the mark "600V." The proceeding was equitable and the complainant had been using the trade-mark "600W" in connection with the sale of cylinder oil until the mark had become well and favorably known. Originally the mark was adopted to indicate the number of degrees of heat which was considered the proper test for a high grade of cylinder oil. Lurton, J., speaking for the court, said, in part: "Under such circumstances, the complainant cannot appropriate to its exclusive use, as a trade-mark, signs or symbols which had come to have well-known significance in the oil trade as indicative of quality or grade. These signs or symbols were public property. Every one had a right to use them to signify the same things. To permit them to be withdrawn from public use, and to be appropriated to the exclusive use of the complainant company, as signifying origin of manufacture, would give a most unjust monopoly, calculated to greatly injure others, by creating the popular belief that oils so branded were the product exclusively of the complainant's factory. The principles preventing such an appropriation of words or signs or symbols having a popular and primary signification from becoming a technical trade-mark are well settled."

William H. Keller, Inc., v. Chicago Pneumatic Tool Co. (C.C.A.) 298 F. 52, 59, involved marks as follows: "50," "60," "80," and "90," used on pneumatic tools. The court, in discussing these marks, said, in part: "Respecting appellee's trade-marks '50,' '60,' '80,' and '90,' we agree with the District Judge, who found upon the evidence presented that they were invalid. Counsel for opposing parties apparently agree upon the law and fully accept the rule as announced in Coats v. Merrick Thread Co., 149 U.S. 562, 13 S.Ct. 966, 37 L.Ed. 847, and well stated in 26 R.C.L. 845. There can be no question but what a number may become a good trade-mark, if its primary adoption be solely to indicate origin. On the other hand, if the figures indicate a grade or a quality only, they may not be the basis for a valid trade-mark."

A very comprehensive discussion of the registrability of marks composed of numbers is found in Autoline Oil Co. et al. v. Indian Refining Co., Inc. (D.C.) 3 F.(2d) 457. Here the general doctrine is reiterated that numbers may constitute a valid trade-mark if they are used solely to denote origin, but are invalid if they identify class, grade, style, or quality only. That opinion, also, recommends caution in holding letters or numerals to be valid trade-marks, because of their liability to use as grade or quality marks, which should be open to the use of the world.

The authorities collected in Shoemaker on Trade-Marks, vol. 1, § 48, and Trade-Mark Protection and Unfair Trading, by Derenberg, pp. 303–305, support the same view.

The tribunals of the Patent Office have refused this registration on the ground that the numerals "76" are descriptive of a grade or quality of oil and do not indicate origin. It is said that the figures would indicate to a purchaser, at least to one skilled in the petroleum art, that the gasoline was of a high grade, either by the Baumé gravity test or by its octane rating. The trade papers in the record substantiate this. The appellant insists that no distilled gasoline could have an octane rating as high as 76. If the numeral would be misdescriptive, because too high, it should not be registered.

As it appears that the mark "76" might be understood by the purchasing public to be a grade or quality mark, and as the

numerals are within the range of the marks which appear to be ordinarily used to indicate octane and Baumé ratings by those engaged in the trade, it appears that the appellant should not be given the right to use these numerals to the exclusion of all others engaged in the trade.

The decision of the Commissioner of Patents is affirmed.

Affirmed.

HATFIELD, Associate Judge, took no part in the decision of this case.